IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

2008 MAY -7 A 10: 08

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| IN RE: | ) |
| | ) |
| KELLY ADKINS, | ) |
| | ) |
| PLAINTIFF, | ) CASE NUMBER: 1:08 cv 338 - WC |
| | ) |
| VS. | ) **JURY DEMAND** |
| | ) |
| NATIONAL ENTERPRISE SYSTEMS, INC., | ) |
| | ) |
| DEFENDANT. | ) |

## COMPLAINT

### I. INTRODUCTION

1.      This is a Complaint for damages consisting of actual, statutory and punitive

damages brought by the Plaintiff, Kelly Adkins, against the Defendant, National Enterprise Systems,

Inc. (hereinafter, "NES").  The Plaintiff herein asserts the following: (a) That the Defendant violated

the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (hereinafter, "FDCPA"); (b) The

Defendant invaded the Plaintiff's right of privacy; (c) The Defendant intentionally inflicted emotional

distress on the Plaintiff; and, (d) That the Defendant was negligent in its hiring or supervision of its

personnel.

### II. JURISDICTION AND VENUE

2.      Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337.

Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue in this District is proper in that the Defendant regularly transacts business

here and the conduct complained of occurred here.

### III.  PARTIES

4.     The Plaintiff is a resident citizen of Houston County, Alabama.

5.     The Defendant, NES, is an Ohio corporation with its principal place of business believed to be located at 29125 Solon Road, Solon, Ohio 44139.  The Defendant's principal purpose is to collect debts using the mail and telephone.  The Defendant regularly attempts to collect debts alleged to be due another.

6.     The Defendant, NES, is a debt collector as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6).

### IV.  FACTUAL ALLEGATIONS

7.     Upon information and belief, the alleged indebtedness in which the Defendant is collecting originated from a SunTrust Bank loan.

8.     Upon information and belief, the SunTrust Bank loan represents an alleged deficiency balance for a vehicle loan.

9.     All debt collection efforts complained of herein relate to collection of the SunTrust Bank loan.

10.     The alleged indebtedness to SunTrust Bank arises out of the Plaintiff's alleged obligation to pay money which arose in a transaction in which the money or property were used primarily for personal, family, or household purposes.

11.     The alleged indebtedness to SunTrust Bank is a consumer debt as that term is defined by the FDCPA, 15 U.S.C. § 1692a(5).

12.     On or about November 16, 2007, the Plaintiff, Kelly Adkins, received a telephone call from the Defendant at her place of employment.  The Defendant's representative informed the receptionist handling the telephone calls that the call was an emergency long-distance telephone

call.  Before the Plaintiff could speak with the Defendant's representative, the representative

terminated the telephone call.

13.     Approximately thirty (30) minutes later, on November 16, 2007, the Defendant's

representative telephoned the Plaintiff's place of employment and left a message with the

receptionist.  The message stated that the Plaintiff must call the Defendant that evening (November

16, 2007) before 6:00 p.m.

14.     On or about November 16, 2007, the Plaintiff returned the Defendant's telephone

call and spoke with a representative identifying himself as "Robert Tice."

15.     At all times referenced in this Complaint, Robert Tice worked as an employee of the

Defendant.

16.     During the course of the conversation on November 16, 2007, the Defendant's

employee, Robert Tice, indicated that he was collecting on the SunTrust Bank account.  During the

course of the conversation, Robert Tice repeatedly told the Plaintiff that it (the Defendant) would

take civil legal action against the Plaintiff.  The Defendant implored the Plaintiff to contact as many

of her relatives as possible to attempt to repay the alleged indebtedness.

17.     Before hanging up, Robert Tice informed the Plaintiff that she must call him back

before 8:00 p.m. on the evening of November 16, 2007.

18.     Robert Tice also informed the Plaintiff that if she did not call him back before 8:00

p.m. on the evening of November 16, 2007, legal action would be filed the next day.

19.     Being in a constant state of fright and anguish, the Plaintiff attempted to borrow

money from her mother, sister and brother-in-law.  Ultimately, the Plaintiff was unsuccessful in

obtaining a loan from her family members.

20.     Being in a constant sate of fright and anguish, the Plaintiff returned Robert Tice's telephone call and reached him before the 8:00 p.m. deadline.  During the course of this conversation, the Plaintiff related that she was unable to borrow the money and requested a payment plan.  During the course of the conversation, Robert Tice placed another of the Defendant's debt collectors on the telephone who attempted to persuade the Plaintiff to borrow the money from her family members.  The Plaintiff related that she was unable to borrow the money and the unknown debt collector stated "Good luck in Court."

21.     After the unknown debt collector terminated the telephone conversation on November 16, 2007, the Plaintiff once again made contact with the Defendant for the purpose of providing her home address for service of the alleged legal process.  During the course of this conversation, the Plaintiff advised the Defendant's employee that the service of the alleged legal process should be directed to her home address and that any further contact should not be directed to her at her place of employment.  During the course of this third telephone conversation, the Defendant's employee once again informed the Plaintiff "Good luck in Court."

22.     Sometime thereafter, the exact date of which is unknown, the Plaintiff received a telephone call from the Defendant attempting to collect on the alleged indebtedness.  The telephone call was received by the Plaintiff at her place of employment.  During the course of the telephone conversation, the Plaintiff informed the Defendant's employee that her employer did not permit personal calls at her place of employment and requested that the Defendant cease all contact at her place of employment.  The Plaintiff continually stressed that her employment would be in jeopardy if the Defendant continued with its telephone calls to her place of employment.  Also during this conversation, the Defendant's employee stated that it would proceed with the Court filing.  The Plaintiff acknowledged that she had previously been threatened with a Court filing and

had assumed that the lawsuit was already in the works. The Plaintiff once again requested a payment plan, which was refused by the Defendant's employee.

23.     During the course of the telephone conversation, the Defendant's employee advised that the Court filing would cost an extra $1,000.00 for the Defendant to file suit and that he (Defendant's employee) did not want the Plaintiff's lawyers to call attempting to work out a payment plan prior to Court.

24.     Despite the Plaintiff insisting that the Defendant not contact her at her job, sometime thereafter, the Defendant began systematically contacting the Plaintiff at her place of employment. The Plaintiff's employer also advised the Defendant not to contact the Plaintiff's place of business.

25.     On or about December 10, 2007, the Plaintiff was delivered a handwritten note from the receptionist indicating that the Defendant had contacted the Plaintiff at her place of employment.

26.     On or about December 10, 2007, the Plaintiff was verbally reprimanded by the receptionist's supervisor regarding the Defendant's constant telephone calls to the Plaintiff.

27.     On or about December 10, 2007, the Plaintiff contacted the Defendant and once again advised the Defendant employee that it must cease all telephone contact with the Plaintiff at her place of employment. The Plaintiff provided her cellular telephone number and asked the Defendant to contact her during non-business hours. The Defendant's employee assured the Plaintiff that no one else would call the Plaintiff's place of employment. The Defendant's employee, however, once again assured the Plaintiff that it (Defendant) would file a lawsuit and would see her in Court.

28.     On or about December 10, 2007, after being assured by the Defendant's employee that it would not call the Plaintiff's place of employment, the Plaintiff spoke with her supervisor, Jeremy Boswell, and assured him that the Defendant would not contact the Plaintiff's place of employment.  The Plaintiff relayed her prior conversation with the Defendant's employee who indicated it would not contact her at her place of employment.

29.     On or about December 11, 2007, the Plaintiff received a message that her supervisor, Jeremy Boswell (hereinafter, "Boswell"), wanted to speak with her in his office.  The Plaintiff met with Boswell who provided Plaintiff with a a written reprimand regarding the Defendant's telephone calls.  The supervisor indicated that the Defendant had called five (5) times on December 10, 2007, even after being assured that the Defendant would not telephone the Plaintiff's place of employment.

30.     During the course of the conversation with the Plaintiff's supervisor, the Plaintiff was informed that if the Defendant called one (1) more time that she would be terminated from her employment.

31.     During the course of the conversation between  Boswell and the Plaintiff, Boswell related that the Defendant's employee, Courtney Poston, contacted him regarding the Plaintiff. During the course of the conversation between the Plaintiff's supervisor and Courtney Poston (hereinafter, "Poston"), Poston verified that the Plaintiff was in fact employed there and asked general questions regarding the Plaintiff's job responsibilities.  During the course of the conversation between Boswell and Poston,  Poston advised that she was calling from the legal department of NES.

32.     During the course of the conversation between Boswell and the Plaintiff, Boswell informed the Plaintiff that Poston said that the Plaintiff had never contacted the Defendant in an attempt to resolve the indebtedness.

33.     During the course of the conversation between Boswell and the Plaintiff, Boswell indicated that he believed the Plaintiff was being untruthful and informed her that she was being taken off the clock for the remainder of the day and that she must resolve the constant telephone harassment being inflicted on the Plaintiff's place of employment.

34.     On or about December 11, 2007, the Plaintiff was clocked out, by her supervisor, from her place of employment.  Thereafter, the Plaintiff contacted the Defendant begging it not to contact her place of employment.

35.     During this final conversation between the Plaintiff and the Defendant's employee on December 11, 2007, the Defendant once again threatened legal action, threatened to take all of the Plaintiff's money from her checking account, and also indicated that she (the Plaintiff) should return every Christmas present that she had purchased so that she could pay the Defendant the money that was owed.  During the course of this conversation, the employee berated the Plaintiff and told her to quit spending money on worthless Christmas presents.

36.     The Plaintiff has suffered severe emotional distress because of the constant and continual telephone calls by the Defendant's employees.

### COUNT I - VIOLATION OF THE FDCPA

37.     The Plaintiff, Kelly Adkins, adopts and incorporates paragraphs 1 through 36 as if fully set out herein.

38.     The Defendant, NES, violated various provisions of the FDCPA including, but not limited to, 15 U.S.C. §§ 1692c, -d, -e, -f, & -g.

39.     The Defendant intended to commit the act.

40.     The Plaintiff has been injured as a result of the Defendant's actions.

## COUNT II - INVASION OF PRIVACY

41.    The Plaintiff, Kelly Adkins, adopts and incorporates paragraphs 1 through 40 as if fully set out herein.

42.    The Defendant undertook a series of telephone calls and communications to the Plaintiff constituting invasions of privacy and an invasion of the right of privacy of the Alabama Plaintiff, as set out and described in the common law of the State of Alabama.  Said communications were harassing, unreasonable, systematic, continuous in number, and were made in disregard for Plaintiff's right to privacy.  Said communications were made to threaten, to force, coerce, harass, frighten, embarrass, and humiliate the Plaintiff into paying a claim, debt, or indebtedness.

43.    The invasions of the right of privacy were intentional, willful, and malicious, and violated the Plaintiff's privacy.  The Plaintiff would prove that the telephone calls and communications were made by various individuals including, but not limited to, the named Defendant and other individuals who held themselves out to be collectors and employees of Defendant, NES, and persons and agents acting on behalf of Defendant, NES.

44.    Said communications constitute an unwarranted and wrongful intrusion into Plaintiff's private activities as well as intentional intrusion into the Plaintiff's solitude and seclusion.

45.    The Defendant, NES, has committed the acts complained of herein in the State of Alabama.

46.    As a proximate consequence of the invasion of the right of Plaintiff's privacy, the Defendant has caused the Plaintiff to suffer wrongful intrusion into the Plaintiff's private activities, great worry, shame, humiliation, loss of sleep, anxiety, nervousness, sickness, physical and/or mental suffering, pain, anguish, and fright.

47.    The Defendant intended to commit the act.

48.     The Plaintiff has been injured as a result of the Defendant's actions.

### COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49.     The Plaintiff, Kelly Adkins, adopts and incorporates paragraphs 1 through 48 as if fully set out herein.

50.     As a proximate consequence and result of the invasion of the right of privacy as delineated in Count II and as a result of making the telephone calls and threats, the Defendant's actions were an intentional infliction of emotional distress, willful and intentionally undertaken, knowing that the same were designed to abuse and coerce and create great mental and physical pain and damage.  The Plaintiff was caused great mental anguish, physical anguish, great inconvenience, chagrin, caused to be embarrassed, caused to be made physically sick, caused great loss of sleep, caused to be made ill, weak and sick, and caused to suffer great fear, fright, and intimidation.  The Defendant, NES, is a corporation, individual, or individuals employed by the corporation and has committed the acts complained of herein in the State of Alabama.

51.     As a proximate consequence of the Defendant's intentional infliction of emotional distress, the Defendant has caused the Plaintiff great worry, shame, humiliation, loss of sleep, anxiety, nervousness, sickness, physical and mental suffering, pain, anguish and fright.

52.     The Defendant intended to commit the act.

53.     The Plaintiff has been injured as a result of the Defendant's actions.

### COUNT IV - NEGLIGENT HIRING AND/OR SUPERVISION

54.     The Plaintiff, Kelly Adkins, adopts and incorporates paragraphs 1 through 53 as if fully set out herein.

55.     As a proximate consequence and result of the invasion of privacy and the intentional infliction of emotional distress, as delineated in Counts II and III, the Defendant, NES', actions constitute negligent hiring and/or supervision and training of its personnel hired for the purpose of collecting debts.

56.     The Defendant, NES, had notice or knowledge, either actual or presumed, of its servants' incompetency or unfitness.  Further, the specific acts of incompetency were of such nature, character, and frequency that Defendant, NES, in the exercise of due care, must have had notice of such action.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Kelly Adkins, prays this Honorable Court enter judgment against the Defendant, National Enterprise Systems, Inc., for the following:

a)      Actual damages;

b)      Maximum statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k;

c)      Punitive damages;

d)      Attorney fees and costs; and,

e)      For all other relief that is just.

Respectfully submitted,

BROCK & STOUT

David G. Poston, Esq.
Walter A. Blakeney, Esq.
Michael D. Brock, Esq.
Gary W. Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330
334-671-5555
334-671-2689 Facsimile
Email: christal@circlecitylaw.com